**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J, and REESE, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 21, 2017**

# In the Court of Appeals of Georgia

A17A0032. MARTIN v. CITY OF COLLEGE PARK.          DO-002

DOYLE, Chief Judge.

In a suit alleging violations of the Georgia Open Meetings Act ("OMA"),[1] Chawanda Martin appeals from the grant of summary judgment to the City of College Park. Martin contends that the trial court erred by ruling that her suit was not filed in accordance with the time limits prescribed in the act at OCGA § 50-14-1 (b) (2) and by granting summary judgment because there was evidence that the City Council made interim employment appointments without a public vote. For the reasons that follow, we affirm in part, reverse in part, and remand the case.

On appeal from the grant of summary judgment, we construe the evidence most favorably towards the nonmoving party, who is given the

---

[1] OCGA § 50-14-1 et seq.

benefit of all reasonable doubts and possible inferences. The party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact. Our review of the grant or denial of a motion for summary judgment is de novo.[2]

So viewed, the record shows that Martin was hired by the City as a firefighter in September 2008.[3] In 2011, Martin was disciplined for certain alleged misconduct during her job, and on July 30, 2012, she was terminated by then-interim Fire Chief Wade Elmore for additional alleged misconduct occurring in 2012. Pursuant to the

---

[2] (Punctuation omitted.) *Nguyen v. Southwestern Emergency Physicians, P.C.*, 298 Ga. 75, 82 (3) (779 SE2d 334) (2015), quoting *Johnson v. Omondi*, 294 Ga. 74, 75 (751 SE2d 288) (2013).

[3] As an initial matter, we note that neither party fully complied with Court of Appeals Rule 25 (c) (2) (iii), which requires that references to the record be indicated by specific record citations. When record citations have been provided, in many instances the citations are to a deposition generally or do not accurately correspond to the appellate record. Further, certain factual assertions in the City's brief are supported with reference to global citations to the answer or the trial court's order. "[F]actual assertions in briefs not supported by evidence of record cannot be considered on appellate review[,] and . . . pleadings unsupported by evidence [in the record] do not raise factual issues that prevent granting of a motion for summary judgment." (Citation omitted.) *Strickland v. Dekalb Hosp. Auth.*, 197 Ga. App. 63, 65-66 (2) (a) (397 SE2d 576) (1990). It is not the role of the Court of Appeals to cull the record on behalf of a party, and a lack of proper citations greatly hinders our consideration of the issues on appeal. Nevertheless, we have endeavored to review the merits of Martin's appeal.

2

City's grievance procedure, Martin appealed her termination to the interim City Manager, Richard Chess, who affirmed the decision. Despite having the opportunity to do so, Martin did not appeal the City Manager's decision to the Mayor or City Council.[4]

Instead, Martin filed an open records request with the City, seeking information outlining the process by which certain interim officials were appointed by the City. Martin's request focused on the appointments of interim Fire Chief Elmore, interim City Manager Chess, interim City Manager Hugh Austin, and interim Human Resources Director Christa Gilbert. Martin ultimately was able to obtain meeting minutes showing that these interim appointments apparently occurred, but they were not done pursuant to a vote by the City Council at an open meeting.

On October 2, 2012, Martin sued the City, Chess, Elmore, and City Councilmen Ambrose Clay, Joe Carn, Tracey Wyatt, and Charles Phillips, Sr. The complaint alleged that the interim appointments were made in violation of the OMA,

---

[4]According to the City's grievance procedure, the City Manager's decision on a grievance is final, subject only to an appeal to the Mayor and the City Council. Further, the "[f]ailure, at any time during the grievance procedure, to submit a grievance to the next step within the time limit, acts as an acceptance of the decision at that step." Martin's failure to exhaust her administrative remedies may preclude her ability to obtain the employment-related relief she seeks, but we need not decide that issue as it will be before the trial court in the first instance on remand.

3

so the interim officials lacked authority to take adverse employment action against Martin. Martin sought reinstatement, expungement of her personnel record, attorney fees and expenses of litigation, a writ of quo warranto, and the imposition of civil penalties against the City Council members. The defendants answered and, following discovery, moved for summary judgment. The trial court granted the motion on the grounds that Martin failed to file her suit within the time prescribed by the OMA, and that Martin had failed to adduce any evidence of unlawful votes. Martin now appeals.[5]

1. First we must determine if Martin's claims are time-barred. Based on the undisputed evidence, all of Martin's claims are time-barred except as to interim City Manager Chess.

We begin with the relevant statutory language. OCGA § 50-14-1 (b) provides, in part:

> (1) Except as otherwise provided by law, all meetings shall be open to the public. All votes at any meeting shall be taken in public after

[5] This court initially transferred Martin's appeal to the Supreme Court of Georgia, which transferred the case back to this Court, noting that Martin had abandoned her writ of quo warranto claim that the trial court had dismissed as moot, appealing only on legal (not equitable) grounds under the OMA.

due notice of the meeting and compliance with the posting and agenda requirements of this chapter.

(2) Any resolution, rule, regulation, ordinance, or other official action of an agency adopted, taken, or made at a meeting which is not open to the public as required by this chapter shall not be binding. Any action contesting a resolution, rule, regulation, ordinance, or other formal action of an agency based on an alleged violation of this provision shall be commenced within 90 days of the date such contested action was taken or, if the meeting was held in a manner not permitted by law, within 90 days from the date the party alleging the violation knew or should have known about the alleged violation so long as such date is not more than six months after the date the contested action was taken.

OCGA § 50-14-3 (b) provides that certain meetings may be held in executive session, i.e., "lawfully closed to the public."[6] Those meetings include:

Meetings when discussing or deliberating upon the appointment, employment, compensation, [or] hiring, . . . of a public officer or employee or interviewing applicants for the position of the executive head of an agency. . . . The *vote* on any matter covered by this paragraph shall be taken in public and minutes of the meeting as provided in this chapter shall be made available. Meetings by an agency to discuss or

---

[6] OCGA § 50-14-1 (a) (2).

take action on the filling of a vacancy in the membership of the agency itself shall at all times be open to the public as provided in this chapter.[7]

Thus, except when discussing filling a vacancy on the City Council itself, discussion and deliberation regarding hiring decisions may be done in a closed executive session, but voting on hiring decisions must be done in a public meeting.[8]

With respect to interim officials Austin, Gilbert, and Elmore, the record is undisputed that each was appointed more than 90 days prior to the date Martin filed her suit, October 4, 2012 — the last of these appointments (interim Fire Chief Elmore) occurring in June 2012 at the latest.[9] Martin was required to file suit within ninety days of these appointments and did not do so. Therefore, as to these interim appointments, Martin's complaint was untimely.

Martin argues that she is entitled to 90 days from the date she knew or should have known of the unlawful appointments, but according to the statutory language in OCGA § 50-14-1 (b) (2), the "knew or should have known" phrase only applies "if

---

[7] (Emphasis supplied.) OCGA § 50-14-3 (b) (2).

[8] See id.

[9] Ninety days prior to October 5, 2012, stretches back to July 6, 2012.

the *meeting* was held in a manner not permitted by law."[10] The executive session meetings in this case were not unlawful because they were limited to personnel discussions, and there is no evidence that any voting took place. Therefore, in the absence of any evidence of unlawful *meetings*, Martin was required to file suit within 90 days of the contested interim appointments themselves.

With respect to interim City Manager Chess, the record contains the testimony of Mayor Longino that Chess "came on in August of — 16th of 2012," "that [Austin] gave his notice and was gone at the end of July, and [Chess] came on in the first of August."[11] According to this account, Chess's appointment was fewer that 90 days prior to the October 4, 2012 date of Martin's action, and the trial court erred by concluding as a matter of law that it was time-barred under OCGA § 50-14-1 (b).

2. Having determined that Martin's claim against Chess is not time-barred, we must decide whether the trial court erred by holding that Martin did not meet her burden on summary judgment because she failed to put forth evidence of any

[10] (Emphasis supplied.)

[11] It is unclear why the dates of employment are at issue in this case, as a simple perusal of one's pay stub should indicate the first day of employment. Further, Chess averred that he served as the interim City Manager in August of 2012, though he did not refer to a specific start date.

unlawful votes. By the trial court's logic, all official action taken with no meeting and no vote is outside the purview of the OMA. This would frustrate entirely the purpose of the OMA,[12] and we decline to interpret OCGA § 50-14-1 (b) in such a way.[13] Because there is undisputed evidence that the City failed to hold any public votes on Chess's interim position, it was error for the trial court to grant summary judgment on this record.

As set forth above, the unambiguous language of the statute requires a public vote on any matter covered by the paragraph, which includes meetings when voting on the appointment or employment of a public officer or employee.[14] The statute does not differentiate or exempt "interim" appointments from its reach.

Here, the evidence was that *no vote* was ever taken. Mayor Longino testified that the mayor made the challenged appointments according to "consensus," and no

---

[12] See *Mtg. Alliance Corp. v. Pickens County*, 294 Ga. 212, 218 (2) (751 SE2d 51) (2013) ("The law requires the commission to hold meetings that are open to the public whenever any 'official business, policy, or public matter' of the county is 'formulated, presented, discussed, or voted upon' . . . .").

[13] See *Kilgore v. R. W. Page Corp.*, 261 Ga. 410, 411 (3) (405 SE2d 655) (1991) ("[T]he Open Meetings Act must be broadly construed to effect its purposes of protecting the public and individuals from closed-door meetings.").

[14] OCGA § 50-14-3 (b) (2).

votes were ever held to fill these interim appointments. Thus, the trial court erred by holding that Martin could not demonstrate a violation of the OMA.

3. In light of our ruling in Divisions 1 and 2, Martin has demonstrated a legal and evidentiary basis to survive summary judgment as to an OMA violation with respect to the appointment of interim City Manager Chess. The superior courts have jurisdiction to enforce compliance with the OMA, including the power to grant injunctive or other equitable relief, award attorneys fees, and impose a civil penalty not to exceed $1,000.00 for the first violation.[15] Accordingly, we remand for a determination of the appropriateness, if any, of a civil penalty as authorized under OCGA § 50-14-6 and/or any other relief as pleaded by Martin.

4. To the extent not otherwise addressed, Martin's remaining enumerations are moot.

*Judgment affirmed in part and reversed in part; case remanded with direction. Miller, P. J., and Reese, J., concur.*

---

[15] OCGA §§ 50-14-5; 50-14-6.

9