304 Ga. 488
FINAL COPY

S17G2008. CITY OF COLLEGE PARK et al v. MARTIN.

HUNSTEIN, Justice.

After she was terminated from her employment as a firefighter with the City, Appellee Chawanda Martin sued the City of College Park, the city council, and various interim officials, including the two individuals responsible for her dismissal (Interim Fire Chief Wade Elmore and Interim City Manager Richard Chess), alleging that the interim appointments were made in violation of the Open Meetings Act, OCGA § 50-14-1 et seq., and, thus, that the interim officials lacked the authority to take adverse employment action against her. The trial court granted summary judgment in favor of the defendants, concluding that Martin's claims were untimely and lacked evidentiary support.

On appeal, the Court of Appeals reversed in part, determining that Martin's challenge to Chess' appointment was timely and, further, that the undisputed evidence demonstrated that the mayor made the challenged

appointment in "consensus" with the city council without ever having taken a vote. Martin v. City of College Park, 342 Ga. App. 289 (802 SE2d 292) (2017). The appellate court then reasoned that, because the Open Meetings Act requires a public vote on the appointment of a public officer or employee, see OCGA § 50-14-3 (b) (2), Martin had "demonstrated a legal and evidentiary basis to survive summary judgment as to an [Open Meetings Act] violation with respect to the appointment of interim City Manager Chess." Id. at 293. We granted certiorari review to consider the Court of Appeals' application of the Open Meetings Act. We conclude that the Court of Appeals should have first determined whether the charter for the City of College Park actually requires a vote to effectuate such an interim appointment before considering the applicability of the public-vote requirement of the Open Meetings Act. Accordingly, we reverse the Court of Appeals in part and remand this case for proceedings consistent with this opinion.

As we delve into the text of the Open Meetings Act, we are mindful that "we must afford the statutory text its 'plain and ordinary meaning,' we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of

the English language would." (Citations and punctuation omitted.) Deal v. Coleman, 294 Ga. 170, 172-173 (751 SE2d 337) (2013). We "look to the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it." Scott v. State, 299 Ga. 568, 571 (788 SE2d 468) (2016). See also OCGA § 1-3-1 (a), (b). Where the statutory text is "clear and unambiguous," we attribute to the statute its plain meaning, and our search for statutory meaning generally ends. See Deal, 294 Ga. at 173. The issue before us is purely legal and, thus, is reviewed de novo. See Expedia, Inc. v. City of Columbus, 285 Ga. 684 (4) (681 SE2d 122) (2009).

"The Open Meetings Act requires all meetings, as that term is defined in the Act, of certain public agencies to be open to the public." Lue v. Eady, 297 Ga. 321, 324 (773 SE2d 679) (2015). As we have explained, the Act "was enacted in the public interest to protect the public — both individuals and the public generally — from 'closed door' politics and the potential abuse of individuals and the misuse of power such policies entail." (Citation and punctuation omitted.) EarthResources, LLC v. Morgan County, 281 Ga. 396, 399 (3) (638 SE2d 325) (2006). The Open Meetings Act is not without exceptions and exemptions. Relevant here, OCGA § 50-14-3 (b) (2) permits the

relevant agency[1] to conduct executive sessions[2]

> when discussing or deliberating upon the *appointment*, employment, compensation, hiring, disciplinary action or dismissal, or periodic evaluation or rating *of a public officer or employee* or interviewing applicants for the position of the executive head of an agency. . . . *The vote* on any matter covered by this paragraph shall be taken in public and minutes of the meeting as provided in this chapter shall be made available.

(Emphasis supplied.) Id. The Court of Appeals determined, without discussion, that the public vote language in subsection (b) (2) *requires* the city council to have voted on Chess' interim appointment as city manager (and presumably any

---

[1] The term "agency," as it is used in the Open Meetings Act, is defined in relevant part as follows:
>    (A) Every state department, agency, board, bureau, office, commission, public corporation, and authority;
>    (B) Every county, municipal corporation, school district, or other political subdivision of this state;
>    (C) Every department, agency, board, bureau, office, commission, authority, or similar body of each such county, municipal corporation, or other political subdivision of the state;
>    (D) Every city, county, regional, or other authority established pursuant to the laws of this state. . . .

OCGA § 50-14-1 (a) (1) (A)-(D).

[2] "'Executive session' means a portion of a meeting lawfully closed to the public." OCGA § 50-14-1 (a) (2).

future interim appointments).[3] The Court of Appeals has plainly misapplied this subsection.

The phrase "the vote . . . shall be taken in public" employs the use of a definite article ("the") and is therefore referential, presupposing a required action. Simply put, the language does not *mandate* a vote on a relevant employment decision, it simply *references* such vote and requires that any such vote be taken in public. Thus, consistent with the design of the Open Meetings Act, the plain language of (b) (2) requires that *when* a vote on a relevant employment matter is taken, it must be taken in public. To the extent that the Court of Appeals' opinion conflicts with this holding, it is reversed.

The key issue here then — which was neither articulated by the parties below nor considered by the lower courts — is whether a vote is required for the appointment of an interim city manager. The scant record before us reflects that Martin has consistently averred that the city charter does not permit such an appointment without a vote by the city council (which must be in public), while the City maintains that the mayor is authorized to make such an appointment

---

[3] There is no argument that the city council is not an "agency" as defined in the Open Meetings Act.

independently. The mayor and city council are bound by the charter, see <u>Sadler v. Nijem</u>, 251 Ga. 375, 377 (2) (306 SE2d 257) (1983), and, thus, the resolution of this matter calls for a review and interpretation of the city charter. However, because this issue was not addressed by the trial court and because the parties have not briefed us on this dispositive issue, we must remand this case for further proceedings.

<u>Judgment reversed and case remanded.</u> Hines, C. J., Melton, P. J., Benham, Nahmias, Blackwell, and Peterson, JJ., concur. Boggs, J., disqualified.

Decided August 27, 2018 — Reconsideration denied October 9, 2018.

Certiorari to the Court of Appeals of Georgia — 342 Ga. App. 289.

<u>Fincher Denmark</u>, Steven M. Fincher, Winston A. Denmark, Emilia C. <u>Walker</u>, for appellants.

<u>Christopher D. Balch</u>; Orr, Brown & Billips, Matthew C. Billips, for appellee.