**FIRST DIVISION
BARNES, P. J.,
BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 18, 2022**

# In the Court of Appeals of Georgia

A22A0740. CITY OF COLLEGE PARK et al. v. MARTIN.

HODGES, Judge.

The merits of this dispute are before this Court for the second time following an initial disposition in 2017, a reversal of this Court by the Supreme Court of Georgia in 2018, and further proceedings in the Fulton County Superior Court on remand. In 2012, Chawanda Martin was terminated from her position as a firefighter by the City of College Park. She filed suit against the City of College Park, the then-interim fire chief Wade Elmore, the then-interim city manager Richard D. Chess, and individual city council members (collectively the "City"). Relevantly, she alleged a violation of the Open Meetings Act ("OMA"), OCGA § 50-14-1, contending that Chess, who upheld her termination, was improperly appointed to his position because the appointment happened without a proper public vote. On remand following the

appellate proceedings in this case, Martin moved for partial summary judgment on her claim. The trial court agreed with Martin that Chess was improperly appointed as interim city manager in violation of the OMA, so it granted Martin's motion and reinstated Martin with back pay pursuant to the equitable powers granted to it by the OMA. It also awarded attorney fees against the City and imposed a civil penalty against the individual council members sued by Martin. The City now appeals and, for the reasons contained herein, we reverse.

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Thus, to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law[ ]. A defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. Thus, the rule with regard to summary judgment is that a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather

must point to specific evidence giving rise to a triable issue. Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9–11–56 (c) have been met. In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623-624 (1) (a) (697 SE2d 779) (2010).

This Court previously outlined the relevant facts of this case.

Martin was hired by the City [of College Park] as a firefighter in September 2008. In 2011, Martin was disciplined for certain alleged misconduct during her job, and on July 30, 2012, she was terminated by then-interim Fire Chief Wade Elmore for additional alleged misconduct occurring in 2012. Pursuant to the City [of College Park]'s grievance procedure, Martin appealed her termination to the [then-interim] City Manager, Richard Chess, who affirmed the decision. Despite having the opportunity to do so, Martin did not appeal the City Manager's decision to the Mayor or the City Council. Instead, Martin filed an open records request with the City [of College Park], seeking information outlining the process by which certain interim officials were appointed by the City. Martin's request focused on the appointments of interim Fire Chief Elmore, interim City Manager Chess, [prior] interim City Manager Hugh Austin, and [then-]interim Human Resources Director Christa Gilbert.

3

Martin ultimately was able to obtain meeting minutes showing that these interim appointments apparently occurred, but they were not done pursuant to a vote by the City Council at an open meeting. On October 2, 2012, Martin sued the City [of College Park], Chess, Elmore, and [the individuals who were City Councilmen at the time:] Ambrose Clay, Joe Carn, Tracey Wyatt, and Charles Phillips, Sr. The complaint alleged that the interim appointments were made in violation of the OMA, so the interim officials lacked authority to take adverse employment action against Martin. Martin sought reinstatement, expungement of her personnel record, attorney fees and expenses of litigation, a writ of quo warranto, and the imposition of civil penalties against the City Council members. The defendants answered and, following discovery, moved for summary judgment. The trial court granted the motion on the grounds that Martin failed to file her suit within the time prescribed by the OMA, and that Martin had failed to adduce any evidence of unlawful votes.

(Footnotes omitted.) *Martin v. City of College Park*, 342 Ga. App. 289, 290-291 (802 SE2d 292) (2017) ("*Martin I*"), reversed in part, 304 Ga. 488 (818 SE2d 620) (2018) ("*Martin II*"). The trial court also found that Martin's quo warranto claim was moot because, during the course of the litigation, Chess left the position of interim city manager and Elmore was appointed the permanent fire chief.

Martin appealed the grant of summary judgment, but this Court transferred her appeal to the Supreme Court of Georgia, which, in transferring the case back to this

4

Court, found that Martin abandoned any appeal of the dismissal of her quo warranto claim. See *Martin I*, 342 Ga. App. at 291, n.5. Accordingly, Martin's quo warranto claim is no longer a part of this litigation.

In *Martin I*, this Court affirmed the trial court's finding that the OMA claims were untimely, but reversed as to the appointment of Chess as interim city manager. 342 Ga. App. at 292-293 (1). This Court then found that the trial court erred in granting summary judgment to the City because the OMA required a vote in a public meeting for Chess' interim appointment. *Id.* at 293 (2). On certiorari, the Supreme Court of Georgia did not reverse this Court's finding that all claims were untimely except as to Chess, and thus Martin's lawsuit now only involves an OMA claim concerning his interim appointment. *Martin II* held that the "key issue" is whether a vote is required for an interim city manager. *Martin II*, 304 Ga. at 490-491. The Supreme Court found that this issue had not been developed by the parties or considered by the lower courts. Id. at 490. The Supreme Court closed its opinion by stating

> [t]he mayor and city council are bound by the charter, and, thus, the resolution of this matter calls for a review and interpretation of the city charter. However, because this issue was not addressed by the trial court

5

and because the parties have not briefed us on this dispositive issue, we must remand this case for further proceedings.

(Citation omitted.) Id. at 491.

On remand, Martin filed a certified copy of the City of College Park charter and moved for partial summary judgment alleging that it required a vote for Chess' interim appointment, which the OMA would require to be made in public. The trial court agreed and granted Martin's motion. This appeal followed.

1. The City contends that the trial court erred in finding that the City violated the OMA in the manner in which it appointed Chess to the position of interim-city manager. We agree.

"The Open Meetings Act (OCGA § 50–14–1) requires that every meeting of the [city council] to be open to the public, except where there is an express statutory exception. Any exception must be construed strictly." (Footnotes omitted.) *Steele v. Honea*, 261 Ga. 644, 645 (1) (b) (409 SE2d 652) (1991). The OMA does contain an exception for executive session, which means "a portion of a meeting lawfully closed to the public." OC]GA § 50-14-1 (a) (2). Executive session is legally permitted for

[m]eetings when discussing or deliberating upon the appointment, employment, compensation, hiring, disciplinary action or dismissal, or periodic evaluation or rating of a public officer or employee or

6

interviewing applicants for the position of the executive head of an agency. . . . The vote on any matter covered by this paragraph shall be taken in public and minutes of the meeting as provided in this chapter shall be made available.

OCGA § 50-14-3 (b) (2).

Relying on the language of this exception, this Court previously found that

the unambiguous language of the [OMA] statute requires a public vote on *any* matter covered by the paragraph, which includes meetings when voting on the appointment or employment of a public officer or employee. The statute does not differentiate or exempt "interim" appointments from its reach. Here, the evidence was that no vote was ever taken. Mayor Longino testified that the mayor made the challenged appointments according to "consensus," and no votes were ever held to fill these interim appointments. Thus, the trial court erred by holding that Martin could not demonstrate a violation of the OMA.

(Citation omitted; emphasis omitted and supplied.) *Martin I*, 342 Ga. App. at 293 (2).

On certiorari, the Supreme Court found this interpretation of the OMA to be erroneous. Specifically, *Martin II* held that

[t]he Court of Appeals determined, without discussion, that the public language in subsection (b) (2) *requires* the city council to have voted on Chess' interim appointment as city manager (and presumably any future interim appointments). The Court of Appeals has plainly misapplied this

7

subsection. The phrase "the vote . . . shall be taken in public" employs the use of a definite article ("the") and is therefore referential, presupposing a required action. Simply put, the language does not *mandate* a vote on a relevant employment decision, it simply *references* such vote and requires that any such vote be taken in public. Thus, consistent with the design of the Open Meetings Act, the plain language of (b) (2) requires that *when* a vote on a relevant employment matter is taken, it must be taken in public. To the extent that the Court of Appeals' opinion conflicts with this holding, it is reversed.

(Footnote omitted; emphasis in original) *Martin II*, 304 Ga. at 490. The Supreme Court then directed that the answer to the question as to whether a vote was required for Chess' interim appointment would be found in the City of College Park charter, and it instructed that issue to be explored on remand. Id. at 490-491. In other words, the Supreme Court held that the OMA did not, itself, require a public vote on Chess' interim appointment. Instead, only if the city charter required a vote to appoint Chess would the OMA then require such a vote to be taken during a public meeting. With that instruction in mind, we turn to an analysis of the charter.

"[M]unicipal charters are originally enacted by the General Assembly, and their provisions . . . have the force of law." *City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 26 (2) (b) (743 SE2d 381) (2013).

The interpretation of statutes, ordinances, and charters presents a question of law for the court. In considering the relevant sections of the [City of College Park]'s charter, we must apply the rules of statutory construction. It is axiomatic that in interpreting a plain and unambiguous enactment we must give its words their plain and ordinary meaning, except for words which are terms of art or have a particular meaning in a specific context. We must seek to give meaning to each part of the [charter] and to avoid constructions which render a portion of the [charter] mere surplusage.

(Citations and punctuation omitted.) *Monticello, Ltd. v. City of Atlanta*, 231 Ga. App. 382, 383 (1) (499 SE2d 157) (1998). Here, the parties have pointed us to Part I, Article IV, Section 4-4 of the charter:

Vacancy in office; temporary appointments.

The mayor and the council may designate a person or persons to perform the functions and duties of the city manager during his absence or disability. *Vacancies in the office of city manager shall be filled by the mayor and the council as early as practicable, and until such vacancy is filled, the mayor and the council shall have full powers to make a temporary appointment* or to perform the functions and duties of his office. (Emphasis supplied.)

The then-mayor of College Park testified that there were never public votes for interim appointments, but that the appointments were made by "consensus," which

9

was not precisely defined. His specific testimony was somewhat self-contradictory on the topic. He testified: "We talk about it as the council and the mayor. They give me direction and I go deliver it as chief executive officer . . . ." Despite his reference to the role of the city council in making interim appointments, the former mayor also testified that he believed he had the authority to appoint the interim city manager due to his role as the chief executive officer of the City of College Park. While it is undisputed that no public vote was conducted for the interim appointment of Chess, and while there is general testimony about the process followed for interim appointments, there is no testimony about the specific process followed for the appointment of Chess.

Martin has not pointed us to any provision of the charter, however, which requires a formal vote for an appointment of an interim city manager. Indeed, the charter merely uses the vague language that the "mayor and council shall have full powers" to make such an appointment without specifying the manner in which they must exercise those powers. Because the plain language of the charter relied upon by Martin does not require a vote to appoint the interim city manager, there was no OMA violation for failing to vote on Chess' appointment in an open meeting. See *Martin*

*II*, 304 Ga. at 490. Accordingly, the trial court erred in granting Martin's motion for partial summary judgment.[1]

2. In light of our finding in Division 1, we need not address the City's remaining enumerations of error.

*Judgment reversed. Barnes, P. J., and Brown, J., concur.*

---

[1] On remand, the City did not move for summary judgment.