**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**July 1, 2025**

# In the Court of Appeals of Georgia

A25A0457. MARTIN v. CITY OF COLLEGE PARK et al.

GOBEIL, Judge.

This is the third appearance of this Open Meetings Act ("OMA") dispute before this Court. See *Martin v. City of College Park*, 342 Ga. App. 289 (802 SE2d 292) (2017) ("*Martin I*"), overruled in part by *City of College Park v. Martin*, 304 Ga. 488 (818 SE2d 620) (2018) ("*Martin II*"); *City of College Park v. Martin*, 365 Ga. App. 640 (879 SE2d 807) (2022) ("*Martin III*"). Chawanda Martin seeks review of the trial court's order granting the City of College Park's motion for judgment on the pleadings in this dispute challenging the termination of her employment as a City firefighter as well as the trial court's order determining that the City was entitled to attorney fees under OCGA § 9-15-14 (b). As explained more fully below, we affirm.

On appeal, we review de novo the trial court's decision on a motion for judgment on the pleadings to determine whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law. The grant of a motion for judgment on the pleadings under OCGA § 9-11-12 (c) is proper only where there is a complete failure to state a cause of action or defense. For purposes of the motion, all well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false. But the trial court need not adopt a party's legal conclusions based on these facts.

*City of Albany v. GA HY Imports*, 348 Ga. App. 885, 887 (825 SE2d 385) (2019) (citation and punctuation omitted).

The underlying facts were previously set forth by this Court in *Martin III* as follows:

Martin was hired by the City of College Park as a firefighter in September 2008. In 2011, Martin was disciplined for certain alleged misconduct during her job, and on July 30, 2012, she was terminated by then-interim Fire Chief Wade Elmore for additional alleged misconduct occurring in 2012. Pursuant to the City of College Park's grievance procedure, Martin appealed her termination to the then-interim City Manager, Richard Chess, who affirmed the decision. Despite having the opportunity to do so, Martin did not appeal the City Manager's decision to the Mayor or the City Council.

Instead, Martin filed an open records request with the City of College Park, seeking information outlining the process by which certain interim officials were appointed by the City. Martin's request focused on the appointments of interim Fire Chief Elmore, interim City Manager Chess, prior interim City Manager Hugh Austin, and then-interim Human Resources Director Christa Gilbert. Martin ultimately was able to obtain meeting minutes showing that these interim appointments apparently occurred, but they were not done pursuant to a vote by the City Council at an open meeting.

On October 2, 2012, Martin sued the City of College Park, Chess, Elmore, and the individuals who were City Councilmen at the time: Ambrose Clay, Joe Carn, Tracey Wyatt, and Charles Phillips, Sr. The complaint alleged that the interim appointments were made in violation of the OMA, so the interim officials lacked authority to take adverse employment action against Martin. Martin sought reinstatement, expungement of her personnel record, attorney fees and expenses of litigation, a writ of quo warranto, and the imposition of civil penalties against the City Council members. The defendants answered and, following discovery, moved for summary judgment. The trial court granted the motion on the grounds that Martin failed to file her suit within the time prescribed by the OMA, and that Martin had failed to adduce any evidence of unlawful votes.

. . .

3

[In *Martin I*,] this Court affirmed the trial court's finding that the OMA claims were untimely, but reversed as to the appointment of Chess as interim city manager. This Court then found that the trial court erred in granting summary judgment to the City because the OMA required a vote in a public meeting for Chess' interim appointment. On certiorari [in *Martin II*], the Supreme Court of Georgia did not reverse this Court's finding that all claims were untimely except as to Chess, and thus Martin's lawsuit now only involves an OMA claim concerning his interim appointment. [The Supreme Court] held that the 'key issue' is whether a vote is required for an interim city manager. The Supreme Court found that this issue had not been developed by the parties or considered by the lower courts. . . .

On remand, Martin filed a certified copy of the City of College Park charter and moved for partial summary judgment alleging that it required a vote for Chess' interim appointment, which the OMA would require to be made in public. The trial court agreed and granted Martin's motion.

*Martin III*, supra, 365 Ga. App. at 642-643 (citations and punctuation omitted). The City appealed, and this Court reversed the grant of summary judgment in favor of Martin, concluding that the City charter did not require a vote to appoint Chess as interim city manager, and so there was no OMA violation for failing to vote on Chess's appointment in an open meeting. Id. at 645-646 (1).

4

On remand, the City filed a motion for judgment on the pleadings based on the holding of *Martin III*. As part of its November 11, 2023 motion, the City requested attorney fees under OCGA § 9-15-14, alleging that it had sent a demand that Martin dismiss the case following *Martin III* but that she refused to do so. Martin then sought and obtained extensions of time within which to file her response to the motion for judgment on the pleadings. The trial court granted an extension through January 29, 2024. Martin did not file a reponse within that time; instead, she filed an amended complaint on February 12, 2024.

In her amended complaint, Martin alleged that the City "violated the OMA by undertaking the official action of appointing Richard Chess as Interim City Manager outside of an open and public meeting and by failing to record that official action in any public minutes." The City filed a renewed motion for judgment on the pleadings, and Martin again sought additional time to respond to the renewed motion. Following a hearing,[1] the trial court granted the City's motion for judgment on the pleadings and

---

[1] The record on appeal does not include a transcript of the hearing.

concluded that the City was entitled to attorney fees for Martin's refusal to dismiss the matter.[2] Martin then filed this appeal.

1. Martin argues that the trial court erred by finding that the meeting appointing Chess as an interim city manager was not required to be open and public under the OMA.

> Our analysis of the Open Meetings Act is guided by our familiar principles of statutory interpretation: [a] statute draws its meaning, of course, from its text. Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Though we may review the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it, where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends.

---

[2] The trial court directed the City to submit evidence on the amount of attorney fees, and it appears from the record that the trial court has not yet determined an amount or officially awarded such fees.

We have previously observed that the Open Meetings Act seeks to eliminate closed meetings which engender in the people a distrust of its officials who are clothed with the power to act in their name. To further this purpose, the Act, including its default position that meetings be open, must be construed broadly, and any exceptions to the Act, including those pertaining to closed meetings, must be narrowly construed.

*Cardinale v. Westmoreland*, 367 Ga. App. 267, 274 (3) (885 SE2d 275) (2023) (citations and punctuation omitted).

In the instant appeal, Martin argues that she has alleged three OMA violations notwithstanding our holding in *Martin III*. Specifically, she contends that (a) "when a governing body of a public agency decides to take 'official action'[ ] its decision must be made in an open or public meeting or it 'shall not be binding;" (b) the defendants' decision by "consensus" "had to be communicated to the individual members [of the City Council]" and such action was "tantamount to a 'vote'" which "had to be taken in an open an public meeting or it was a violation of the [OMA], whether or not a 'vote' was required by the Charter;" and (c) the OMA requires that the City's actions in appointing Chess were required to be recorded "in the minutes." We address each of these contentions in turn.

7

(a) First, to the extent Martin continues to challenge Chess' appointment because it was not held during an open and public meeting, her arguments are foreclosed by our prior decisions in this case.

Martin first argues that the City's appointment of Chess was an "official action" that was required to be done in an open and public meeting under OCGA § 50-14-1 (b) (2). That provision states in relevant part that "[a]ny resolution, rule, regulation, ordinance, or other official action of an agency adopted, taken, or made at a meeting which is not open to the public *as required by this chapter* shall not be binding." OCGA § 50-14-1 (b) (2) (emphasis supplied). As the City correctly argues, the Supreme Court of Georgia noted in *Martin II,* and this Court noted in *Martin III*, that OMA allows for closed executive sessions "when discussing or deliberating upon the *appointment, employment,* compensation, *hiring,* disciplinary action or dismissal, or periodic evaluation or rating of a public officer or employee[.]" (Emphasis supplied.) *Martin II*, supra, 304 Ga. at 490 (citing OCGA § 50-14-3 (b) (2)); *Martin III*, supra, 365 Ga. App. at 644 (1) (same). And, *Martin III* specifically held that the charter did not require a vote to appoint the interim city manager. 365 Ga. App. at 646 (1). Thus, as was previously discussed in our decisions, the OMA did not require that

8

the "official action" of Chess' interim appointment needed to be taken in public, and so it is not null and void on that basis.

(b) Martin next points to the evidence that Chess's appointment was made through a "consensus" between the mayor and the City council, and she argues that this "consensus" was essentially a de facto "vote" that was required to be public under OCGA § 50-14-3 (b) (2).[3] This argument is foreclosed by our decision in *Martin I*, wherein we noted the exact opposite: the fact that the appointment was made by "consensus" meant that "*no vote* was ever taken." *Martin I*, supra, 342 Ga. App. at 293 (2) (emphasis in original).

Accordingly, in light of our prior decisions on the subject, Martin's arguments concerning Chess' appointment itself are without merit.

(c) Martin also argues that the "City Council's official action [of appointing Chess as Interim City Manager] had to be recorded in the minutes." We disagree.

---

[3] "The vote on any matter covered by this paragraph shall be taken in public and minutes of the meeting as provided in this chapter shall be made available." OCGA § 50-14-3 (b) (2).

As explained in *Martin II* and *Martin III*, it is clear that the OMA did not impose a requirement on the City to record Chess's interim appointment in the City's minutes.

OCGA § 50-14-3 (b) (2) provides in relevant part: "The vote on any matter covered by this paragraph shall be taken in public and minutes of the meeting as provided in this chapter shall be made available." As the discussed by our Supreme Court in *Martin II*, "[t]he phrase 'the vote . . . shall be taken in public' employs the use of a definite article ('the') and is therefore referential, presupposing a required action. Simply put, the language does not *mandate* a vote on a relevant employment decision, it simply *references* such vote and requires that any such vote be taken in public." *Martin II*, 304 Ga. at 490 (punctuation omitted; emphasis in original).

In *Martin III*, we held that the City's charter did not require a formal vote for the appointment of an interim city manager. 365 Ga. App. at 646 (1). This Court noted that the "charter merely uses the vague language that the 'mayor and council shall have full powers' to make such an appointment without specifying the manner in which they must exercise those powers." Id. at 646 (1).

Applying the construction of OCGA § 50-14-3 (b) (2) employed in *Martin II*, we also conclude that the OMA does not require that the City conduct a meeting to make interim appointments. And it logically follows that where the City was not required under its charter to hold a meeting, the City was likewise not required to generate minutes. Put another way, "consistent with the design of the [OMA], the plain language of (b) (2) requires that *when* a [meeting] on a relevant employment matter" is required to be conducted, official actions must be recorded in the minutes of that meeting. *Martin II*, 304 Ga. at 490 (emphasis in original). But because no meeting was required, there was no OMA violation, and the trial court did not err by granting the City's motion for judgment on the pleadings.[4]

2. Finally, Martin argues that the trial court erred by awarding attorney fees under OCGA § 9-15-14 because her actions in continuing to litigate this case following

---

[4] In a related argument, Martin asserts that the trial court erred in concluding that *Martin III* required the dismissal of the case. As explained above, in light of the decisions in *Martin II and Martin III*, and because she failed to meaningfully amend her claim to state a separate violation of the OMA, the City was entitled to judgment on the pleadings. In any event, our standard of review for orders granting motions for judgment on the pleadings is de novo, and therefore we find no reversible error in this regard.

*Martin III* did not unnecessarily expand the litigation. We find no error in the trial court's determination that Martin engaged in sanctionable conduct.

Under OCGA § 9-15-14 (b):[5]

> The court may assess reasonable and necessary attorney's fees and expenses of litigation in any civil action in any court of record if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct[.]

Martin contends that the trial court "was operating under a mistaken impression of the effect of a reversal of the grant of summary judgment." However, the trial court's order does not support this argument. Specifically, the trial court determined that the defendants were entitled to OCGA § 9-15-14 attorney fees after concluding that Martin unnecessarily expanded the litigation by "stubbornly refus[ing] to dismiss this matter," "asserting a frivolous amendment," and "forc[ing]

---

[5] Although the trial court cited to both OCGA § 9-15-14 (a) and (b), it awarded attorney fees after concluding that Martin "needlessly expanded the litigation," and so we assume for purposes of this opinion that it awarded fees under subsection (b).

Defendants to file multiple motions premised upon the clear appellate authority." In addition, the trial court described the litigation after *Martin III* as follows:

> Based upon the Supreme Court's decision [in *Martin III*], on July 11, 2023, the City sent Martin the Demand to Dismiss Litigation and Notice of Intent to Seek Litigation Expenses ("Demand"), . . . stating that the City would seek litigation expenses if Martin continued to litigate the meritless claims — Martin failed to respond.
>
> On November 2, 2023, the City filed the Motion for Judgment on the Pleadings, arguing that the [c]ourt is required to dismiss this action because, inter alia, no vote was required to appoint Chess — the Supreme Court had resolved the lone issue forming the basis of this matter. Rather than respond to the motion, Martin repeatedly obtained extensions due to Counsel's purported medical conditions. Despite gracious considerations and professional courtesies, on February 12, 2024, Martin filed the Amended Complaint asserting the same OMA claim.

Viewed in the light most favorable to the trial court's ruling, the above-stated evidence supports the finding of sanctionable conduct. *Ernest v. Moffa*, 359 Ga. App. 678, 685-686 (5) (a) (859 SE2d 834) (2021). Although fees may be appropriate as they relate to Martin's pursuit of issues which have been previously decided against her, because

13

the trial court has yet to award a specific amount of fees, we express no opinion on the propriety of any future fee award.

*Judgment affirmed. Rickman, P. J., concurs. Davis, J., concurs in Divisions (1) (a) and (1) (b) and dissents in Divisions (1) (c) and (2).*

# In the Court of Appeals of Georgia

A25A0457. MARTIN v. CITY OF COLLEGE PARK et al.

DAVIS, Judge, dissenting in part.

Because I believe that Martin's amended complaint stated a claim for a violation of OMA based on the alleged failure to record Chess' appointment in the relevant meeting minutes, I respectfully dissent from Division (1) (c) of the Majority's opinion.[1]

Under OCGA § 50-14-1 (e) (2) (A), "[a] summary of the subjects acted on . . . . at the meeting of any agency shall be written and made available to the public for

---

[1] I also dissent to Division (2) to the extent that I believe Martin was justified in raising a new claim for the failure to record the appointment in the minutes and that attorney fees under OCGA § 9-15-14 was not appropriate for that action. I otherwise fully concur with the rest of the Majority's opinion.

2

inspection[.]" Generally, "[m]inutes of [closed] executive sessions shall also be recorded but shall not be open to the public. Such minutes shall specify each issue discussed in executive session by the agency or committee." OCGA § 50-14-1 (e) (2) (C). OCGA § 50-14-3 (b) (2), however, which sets out the exception allowing a closed session when discussing the appointment and hiring of a public employee, clearly states that the "minutes of the meeting as provided in this chapter shall be made available."

It is my view that, under these provisions, Martin's allegation that Chess' appointment was not in the minutes for the August 6, 2012 meeting that were "made available" states a valid claim of an OMA violation. Specifically, OCGA § 50-14-1 (e) (2) (C) requires that the minutes of any meeting "*specify each issue* discussed in executive session by the agency or committee." (Emphasis supplied.) In my view, it is entirely immaterial that the City was not required to hold a meeting to appoint Chess - Martin alleged that they nevertheless *did* hold a meeting and appointed Chess during a closed executive session during that meeting.

Thus, because the City took an action on (and necessarily "discussed" the "issue" of) Chess' appointment during a closed executive session of a meeting, I

believe that OCGA § 50-14-1 (e) (2) (C) required the City to record Chess' appointment in the minutes and that its alleged failure to do so stated a claim for an OMA violation. Reading the statute this way would also comport with the express legislative purpose of shining daylight on closed sessions that the Majority noted in its opinion. See *Cardinale v. Westmoreland*, 367 Ga. App. 267, 274 (3) (885 SE2d 275) (2023). I therefore respectfully dissent.