312 Ga. 471
FINAL COPY

S21A0761.  DUNN v. THE STATE.

MCMILLIAN, Justice.

Darius Jarrell Dunn appeals his convictions for malice murder and other charges in connection with the shooting death of Anthony Tavarez. Dunn asserts on appeal that the evidence at trial was insufficient to support his conviction for a violation of the Georgia Street Gang Terrorism and Prevention Act, OCGA § 16-15-1 et seq. (the "Gang Act"). He also argues that the trial court abused its discretion in admitting alleged bad character evidence and allegedly irrelevant and prejudicial video evidence. Finally, Dunn contends that he received constitutionally ineffective assistance of counsel because his trial counsel did not seek to redact the State's exhibits to exclude allegedly irrelevant and prejudicial bad character evidence.  Discerning no merit to these contentions, we affirm.[1]

---

[1] Tavarez was killed on September 16, 2015, and on December 17, 2015,

Construed in favor of the jury's verdict, the evidence at trial

showed that Dunn, who was a member of a gang known as the

"Gangster Disciples" (the "GD"), engaged in a physical altercation

on September 16, 2015, with an individual known as "Quan," who

a Cobb County grand jury indicted Dunn, Melvin William Evans, and Joshua Raphal Gore in connection with Tavarez's death, charging them jointly with malice murder (Count 1), felony murder (Counts 2-4), armed robbery (Count 8), aggravated assault (Count 9), violation of the Gang Act (Count 10), and possession of a firearm during the commission of a felony (Count 11). Each of the three co-defendants was also charged individually with felony murder based on possession of a firearm by a convicted felon (Counts 5-7).

Prior to trial, Evans entered a guilty plea to felony murder and a violation of the Gang Act, and Gore entered a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (91 SCt 160, 27 LE2d 162) (1970), to a violation of the Gang Act. Their convictions are not a part of this appeal.

Dunn was tried before a jury from August 14 to 18 and August 21 to 23, 2017, and the jury convicted him of all charges. The trial court sentenced Dunn as a recidivist pursuant to OCGA § 17-10-7 (a) to life in prison without parole for malice murder; life in prison, to run concurrently, for armed robbery; fifteen years in prison, to run concurrently, for the violation of the Gang Act; and five years in prison, to run consecutively to Count 1, for possession of a firearm during the commission of a felony. All other counts were merged or vacated by operation of law.

Dunn filed a motion for new trial on September 22, 2017, and amended that motion through new counsel on April 5, 16, 23, and May 15, 2018. The trial court denied the motion for new trial as amended on June 14, 2018. Dunn filed a timely notice of appeal, which was docketed in this Court to the term of court beginning in December 2018. However, that appeal was struck from the docket after Dunn's appellate counsel moved to withdraw after accepting employment as a prosecuting attorney, and the case was remanded to the trial court for appointment of new appellate counsel. Dunn's appeal was subsequently re-docketed to the April 2021 term of court and submitted for a decision on the briefs.

2

was affiliated with a gang called the "Bloods." This altercation occurred at an apartment complex in Cobb County and ended when police were reported to be in the vicinity. At around the same time as the altercation, Tavarez and Darius Crenshaw-Griffin were shooting dice in front of a nearby breezeway. Neither man was involved in the fight between Dunn and Quan, nor were they affiliated with Dunn, the GD, or the Bloods.

Melvin William Evans and Joshua Raphal Gore, Dunn's co-indictees and fellow GD members, testified that they left the apartment complex with Dunn after the altercation ended. Dunn was upset and talking about getting back at Quan and the Bloods. The three men went to a nearby residence, where Dunn retrieved a rifle and a handgun, and then returned to the apartment complex about ten to fifteen minutes later. Evans and Gore testified that Dunn was still upset and agitated about his altercation with Quan and wanted to confront the Bloods. When they drove back to the scene of the fight, Dunn and Evans got out of the car while Gore waited inside. Dunn was armed with the handgun, and Evans was

3

carrying the rifle, but Quan and the others from the earlier altercation were gone.

Tavarez and Crenshaw-Griffin, however, were still in front of the breezeway shooting dice. Dunn and Evans approached the two men, forced them inside the breezeway, and demanded their money. At the time, Tavarez had approximately $1,500 on his person and Crenshaw-Griffin had $500. When Tavarez refused to surrender his money, Dunn grabbed Tavarez's pocket, eventually ripping it from Tavarez's pants. Tavarez then ran to the rear of the breezeway, and both Dunn and Evans fired their weapons and fled. After police officers arrived on the scene, they discovered Taverez's body lying at the rear of the breezeway, his pants pocket on the ground inside the breezeway, and only $375.01 on his person. Ballistic testing later showed that a bullet fired from Evans's rifle hit Tavarez in the back, and the medical examiner testified that this injury caused Tavarez's death.

An inmate, with whom Dunn was incarcerated after his arrest, testified that Dunn admitted he was a Gangster Disciple and that

4

he had decided, along with his fellow gang members, to rob Tavarez because of a gambling-related incident that had occurred earlier between other GD members and Tavarez. On the day of the altercation, Dunn said he had received a call about a "beef" some members of another GD sect had with Tavarez over an earlier dice game. According to Dunn, Tavarez won the dice game but refused to give Dunn's cohorts the opportunity to win their money back, although it was the usual practice to do so. The inmate said that Dunn "spoke about the respect they had for [Dunn] in his area," explaining that Dunn said "whenever somebody called him — and they would call him — if he came out, his time was valuable, so someone is going to get it." Dunn admitted that he had robbed Tavarez at gunpoint, ripped his pocket, and subsequently shot at him.

At trial, the State presented two experts on criminal street gangs, who testified that the GD was such a gang and that Dunn had several tattoos depicting signs and symbols associated with the GD, which led them to conclude that Dunn was a member of the

gang. They also identified Facebook pictures of Dunn, in which he was wearing GD colors and making hand signs associated with the GD. With the stated intent of demonstrating the existence of a criminal street gang and related gang activity, the State further introduced Dunn's prior convictions for attempted burglary, theft by taking, and a violation of the Georgia Controlled Substances Act (marijuana possession), as well as a YouTube video purporting to depict GD symbols and signs and to reflect the presence of the GD in Georgia, although Dunn did not appear in the video.

1. Dunn first argues that the evidence was insufficient to support his conviction for violating the Gang Act.[2] In considering Dunn's argument,

> we view all of the evidence admitted at trial in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which [he] was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

---

[2] Dunn does not challenge the sufficiency of the evidence to support his other convictions. We no longer routinely review the sufficiency of the evidence sua sponte in non-death penalty cases, see *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020), and we decline to exercise our discretion to review the sufficiency of these convictions.

*Menzies v. State*, 304 Ga. 156, 159-60 (II) (816 SE2d 638) (2018). "Our limited review under the standard set out in *Jackson* leaves to the jury the resolution of conflicts in the testimony, the weight of the evidence, the credibility of witnesses, and reasonable inferences to be made 'from basic facts to ultimate facts.'" Id. at 160 (II) (citations omitted).

Dunn was charged with a violation of the Gang Act under Count 10 of the indictment, which alleged that he participated in criminal gang activity through the commission of "a crime of violence and an offense involving the possession and use of a weapon, to wit: Armed Robbery and Aggravated Assault." Dunn asserts that the State failed to show that those offenses were related to gang activity as required under OCGA § 16-15-4, and not based on some other motive such as greed.

To establish a violation of the Gang Act, the State must show:

(1) the existence of a "criminal street gang," defined in OCGA § 16-15-3 (3) as "any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang

7

activity"; (2) the defendant's association with the gang; (3) that the defendant committed any of several enumerated criminal offenses, including those "involving violence, possession of a weapon, or use of a weapon"; and (4) that the crime was intended to further the interests of the gang.

*Butler v. State*, 310 Ga. 892, 896-97 (1) (b) (855 SE2d 551) (2021) (citation and punctuation omitted). The fourth element requires that the State prove "some nexus between the act and the intent to further street gang activity." Id. See also *Rodriguez v. State*, 284 Ga. 803, 807 (1) (671 SE2d 497) (2009). This nexus can be established by proof of the defendant's association with a gang and participation in its activities before and during the crimes charged. See *Hayes v. State*, 298 Ga. 339, 343 (a) (781 SE2d 777) (2016). Dunn does not dispute that the evidence sufficiently proved the first three elements of the crime but instead focuses on the fourth element.

Here, the evidence showed that the shooting occurred after Dunn returned to the location of an altercation that occurred a short time earlier between the GD and the Bloods. When he discovered that the Bloods had left the area, Dunn approached Tavarez to

8

demand money at gunpoint. Dunn later told his fellow inmate that, as a respected GD member, Dunn was called to assist other gang members and, when he came out, someone was "going to get it." Dunn told the inmate that Dunn had been called on the day of the altercation to respond to a gambling incident involving Tavarez and other GD members. In response to his fellow gang members' call, Dunn, along with the other GD members with him, decided to rob Tavarez, which led to the shooting. In addition, one of the State's gang experts testified that maintaining respect is important to gang members, as is getting revenge for perceived disrespect, and that aggravated assault and armed robbery were the types of gang-related offenses committed by the GD.

We conclude that, when viewed in the light most favorable to the verdict, the evidence at trial was sufficient to support Dunn's conviction for violation of the Gang Act. The jury was authorized to weigh the evidence and to credit the testimony of Dunn's fellow inmate that Dunn said he was acting at the behest of other GD members, as he had at other times before, when he approached

9

Tavarez to rob him. Thus, the jury was authorized to find that the State had shown the requisite nexus between Dunn's crimes and the intent to further the GD's interests. See *Boyd v. State*, 306 Ga. 204, 211 (1) (b) (830 SE2d 160) (2019) (in finding the requisite nexus, the jury was authorized to credit evidence that the defendant's crimes were part of a gang-related drug deal over conflicting accomplice testimony that they were not gang-related); *Stripling v. State*, 304 Ga. 131, 134-35 (1) (b) (816 SE2d 663) (2018) (evidence that defendant was in a gang and had participated in other criminal activity for the gang, along with expert testimony that the gang makes most of its money through armed robbery, supplied the requisite nexus between defendant's crimes, including armed robbery and murder, and the intent to further gang interests).

2. Dunn next contends that the trial court abused its discretion in allowing the State to introduce inadmissible character evidence involving his two prior felony convictions and prior misdemeanor convictions, when the defense did not open the door to such evidence. Although Dunn concedes that the State was required to prove his

status as a convicted felon,[3] he argues that evidence of one felony would have sufficed and that the evidence of the other felony and the misdemeanor convictions was not probative and was needlessly cumulative. Dunn further contends that the exhibits proffered to show his two felony convictions were inadmissible because they also contained irrelevant and prejudicial information relating to his post-conviction probation revocation proceedings.

Before trial, the State filed a timely notice of intent to introduce evidence of Dunn's two prior felony convictions (for theft by taking and attempted burglary) and his prior misdemeanor conviction for marijuana possession pursuant to OCGA §§ 16-15-1 et seq., 24-4-403 ("Rule 403"), 24-4-404 (b) ("Rule 404 (b)"), and 24-4-418 ("Rule 418") for the limited purpose of proving that Dunn violated the Gang Act. Dunn's attorney later filed a motion to exclude evidence of any unindicted criminal gang activity, arguing that his prior convictions

---

[3] We note that Dunn is correct because he was charged, individually, in Count 5 of the indictment with the offense of felony murder based on the predicate offense of possession of a firearm by a convicted felon alleging his prior conviction for theft by taking.

11

were inadmissible because the State had failed (1) to meet the requirements for admission under OCGA § 16-15-9[4] because the State did not show that any of the proffered offenses had been committed in furtherance of criminal street gang activity or (2) to establish that the prior convictions were admissible under Rule 404 (b). Following a hearing, the trial court ruled that the prior convictions were admissible under Rule 418.[5] At trial, Dunn's

---

[4] OCGA § 16-15-9 provides, in pertinent part:

> For the purpose of proving the existence of a criminal street gang and criminal gang activity, the commission, adjudication, or conviction of any offense enumerated in paragraph (1) of Code Section 16-15-3 by any member or associate of a criminal street gang shall be admissible in any trial or proceeding. . . .

We note that this Court held OCGA § 16-15-9

> to be unconstitutional to the extent that it permits evidence that third-party gang members have committed any of the offenses enumerated "to be used as proof against other individuals in any proceeding in which those other individuals are charged with the crime of participating in criminal gang activity" without subjecting such evidence to the requirements of the Confrontation Clause of the Sixth Amendment.

*Anthony v. State*, 303 Ga. 399, 409 (8) n.16 (811 SE2d 399) (2018) (emphasis omitted) (quoting *State v. Jefferson*, 302 Ga. 435, 440 (807 SE2d 387) (2017)). Here, Dunn is objecting to evidence of his own prior convictions, and because Dunn does not assert any argument concerning OCGA § 16-15-9, we do not address that provision.

[5] Rule 418 (a) provides that

> [i]n a criminal proceeding in which the accused is accused of conducting or participating in criminal gang activity in violation of

counsel again objected to the admission of this evidence, referencing his prior arguments from the pretrial motion and asserting that the defense had not opened the door to allow the introduction of evidence of Dunn's bad character. The trial court admitted the evidence over the defense objections, but, prior to its admission, instructed the jury that it could consider the evidence of the prior convictions

> only insofar as it may relate to the required element of conviction of a felony for the offense in count five [(felony murder based on the predicate act of possession of a firearm by a convicted felon)] and violation of [the Gang Act] and not for any other purpose or count.

(a) Dunn argues that evidence of a second felony conviction and his misdemeanor conviction for marijuana possession were inadmissible under Rule 404 (b) because the defense did not open the door to their admission and the evidence was cumulative and

---

> Code Section 16-15-4, evidence of the accused's commission of criminal gang activity, as such term is defined in Code Section 16-15-3, shall be admissible and may be considered for its bearing on any matter to which it is relevant.

The trial court did not address whether the convictions were also admissible under OCGA § 16-15-9 or OCGA § 24-4-404 (b), nor will we.

13

not probative.[6] See *Thompson v. State*, 302 Ga. 533, 539 (III) (A) (807 SE2d 899) (2017). However, the trial court admitted Dunn's prior convictions under Rule 418, not Rule 404 (b), and Dunn does not assert that the prior convictions were improperly admitted under Rule 418.[7] Therefore, this argument presents nothing for us to review. See *Fisher v. State*, 309 Ga. 814, 821 (3) n.5 (848 SE2d 434) (2020) (court limits its review of the admissibility of evidence to issues raised on appeal and does not address other grounds appellant failed to raise in the trial court or on appeal).

(b) Turning next to Dunn's argument that the probation revocation documents included in Exhibits 426 and 427 relating to

---

[6] Although the use of the word "probative" invokes the text of Rule 403, Dunn does not otherwise mention Rule 403 on appeal, and he did not argue in the trial court that the evidence was inadmissible because it was not probative. To the extent that Dunn is raising a Rule 403 argument for the first time now, our consideration of the issue is limited to only a plain error review. As discussed further in Division 2 (b) below, Dunn must establish, as part of the required test for plain error, that the admission of the evidence affected his substantial rights, by showing that it probably did affect the outcome of his trial. See *McKinney v. State*, 307 Ga. 129, 133 (2) (834 SE2d 741) (2019). However, we conclude that he has failed to do so in light of the other substantial evidence of his guilt presented at trial.

[7] Dunn does not mention Rule 418 in his briefing in the trial court or on appeal, and we express no opinion as to whether Dunn's prior offenses were admissible under that statute.

his prior felony convictions should not have been admitted because they were irrelevant and prejudicial, we note that Dunn failed to object to the admission of these documents in either his pretrial motion or at trial. Accordingly, we review this argument only for plain error. See *McKinney v. State*, 307 Ga. 129, 133 (2) (834 SE2d 741) (2019); OCGA § 24-1-103 (d). To show that the trial court committed plain error, Dunn

> must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings. To show that the error affected his substantial rights, [Dunn] is required to show that error probably affected the outcome of his trial.

*Griffin v. State*, 309 Ga. 860, 864 (2) (849 SE2d 191) (2020) (citation and punctuation omitted). "An appellant must establish all four elements of the test in order to demonstrate plain error, so satisfying this test is difficult, as it should be." *Knighton v. State*, 310 Ga. 586, 591 (2) (a) (853 SE2d 89) (2020) (citations and punctuation omitted).

The exhibits for the two felony convictions each included

several pages of documents relating to later probation revocation proceedings. Exhibit 426, addressing Dunn's prior attempted burglary conviction, contained an order revoking Dunn's probation in that case. As the grounds for revocation, the order listed Dunn's subsequent conviction for theft by taking, reflected in Exhibit 427, as well as the technical grounds of failure to complete his GED, failure to pay restitution, failure of Intensive Probation Supervision, and failure to report to probation. Although Exhibit 427 contains two orders revoking Dunn's probation on that conviction, the first order does not specify the grounds for revocation, and the second lists the grounds as Dunn's failure to report to probation, complete his required community service, and pay his fine, fees, and restitution.

Even if we assume that the admission of these extraneous documents showing Dunn's failure to comply with his probation requirements was clear error, Dunn has failed to "make an affirmative showing that the error probably did affect the outcome below," as required to establish plain error. *McKinney*, 307 Ga. at

16

135 (2) (b) (citation and punctuation omitted). The reference to the theft by taking conviction in Exhibit 426 was duplicative of the conviction shown in Exhibit 427, which was admissible as the predicate conviction for the offense of felony murder charged in Count 5 of the indictment, and the other stated grounds for the revocations were technical violations. Also, the probation revocation materials were never mentioned in witness examination or argument by either party. In light of the substantial and properly admitted evidence of Dunn's guilt, as outlined above, we conclude that any prejudicial effect from the admission of Dunn's probation violations and revocations would have been so minimal that Dunn has failed to show a probability that such evidence changed the outcome of his trial. See *Morton v. State*, 306 Ga. 492, 497 (3) (831 SE2d 740) (2019) (appellant failed to affirmatively show that trial court's admission of allegedly improper testimony "probably did affect the outcome below" in light of defendant's pre-trial admissions and testimony of other witnesses at trial (citation and punctuation

omitted)).[8]

3. Dunn also asserts that the trial court abused its discretion in admitting a YouTube "gangster-rap" video, which an expert identified as connected to the GD, but which did not involve Dunn. Dunn asserts that the video was not properly authenticated, had no probative value, and was prejudicial. Dunn further asserts that the introduction of the video violated his Sixth Amendment confrontation rights because no one involved in the production of the video was a witness at trial.

The State sought to introduce the YouTube video during the

---

[8] Dunn also argues that his trial counsel provided ineffective assistance by failing to seek exclusion of the probation revocation documents in Exhibits 426 and 427. But, pretermitting whether counsel should have objected to the inclusion of such documents, Dunn has not shown that a reasonable probability exists that the outcome of the trial would have been different if counsel had so objected as required to establish his ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668, 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984) (to establish claim of ineffective assistance of counsel, defendant must show "a probability sufficient to undermine confidence in the outcome [of his trial]"). Because we have concluded that Dunn has failed to establish prejudice under the plain-error standard, he also cannot establish prejudice to support his ineffective assistance of counsel claim. See *Bozzie v. State*, 302 Ga. 704, 711 (4) (b) (808 SE2d 671) (2017) ("The prejudice step of the plain-error standard is equivalent to the prejudice prong for an ineffective assistance of counsel claim."). Therefore, Dunn's ineffective assistance of counsel claim fails.

testimony of one of its gang experts, who identified the video as connected to the GD in Georgia. In support of the video's admission, the prosecutor pointed to the expert's testimony that gangs commonly use video or social media as recruitment tools and asserted that the video's depiction of symbols, tattoos, and colors helped to illustrate the expert's testimony about such matters associated with the GD.[9] The prosecutor argued that the video was relevant to show the existence of the GD gang and that more than three individuals were involved in the GD as required to establish that the GD was a criminal street gang under OCGA § 16-15-3 (3). After the trial court reviewed the video outside the jury's presence, and over defense objections, the trial court ruled the State could show the video, although not an extended showing and only at the end of the expert's testimony, after he had identified the gang

---

[9] The record reflects that the State ultimately played for the jury only the first minute and 15 seconds of the video, which depicts the performance of a professional rapper, along with other individuals wearing black and blue clothing, using "pitchfork" hand gestures, and displaying six-pointed stars within an outline of a map of Georgia, all of which the expert identified as GD symbols.

symbols and other gang-identifying markers.

Although we are doubtful that Dunn's Sixth Amendment rights were violated since he points to no testimonial statement in the video, we need not determine whether the trial court erred in admitting the video on any of the grounds Dunn raises because we conclude that any error in the admission of the video was harmless.

> Even an error of constitutional magnitude may be considered harmless if the State can prove beyond a reasonable doubt that the error did not contribute to the verdict, such as when the evidence at issue is cumulative of other properly-admitted evidence or when the evidence against the defendant is overwhelming.

*Armstrong v. State*, 310 Ga. 598, 605 (3) (852 SE2d 824) (2020) (citation and punctuation omitted).

Here, in addition to the video, the State presented expert testimony regarding the GD, their colors, symbols, and activities. The State also introduced photographs of Dunn displaying GD hand signals, wearing GD colors, and with tattoos depicting GD symbols, as well as photographs of Dunn's co-indictees with tattoos of GD symbols. Dunn also admitted his GD membership, as did his two co-

20

indictees. Therefore, the video, even if improperly admitted, was cumulative of other properly admitted evidence regarding the GD and Dunn's GD membership. Moreover, Dunn's two fellow gang members testified about Dunn's involvement in the crimes, and the State presented evidence that Dunn admitted his participation and that he acted at the behest of other GD members in committing the crimes. Under these circumstances, we conclude beyond a reasonable doubt that the introduction of the video did not contribute to the verdict. See *Armstrong*, 310 Ga. at 605 (3) (concluding beyond a reasonable doubt that testimony describing a photo of the defendant showing gang hand signs, even if hearsay and a violation of the Confrontation Clause, did not contribute to the verdict in light of other strong evidence of guilt); *Moore v. State*, 305 Ga. 251, 255 (2) (a) (824 SE2d 377) (2019) (concluding, in light of strong evidence that defendant committed crimes charged, that it is highly probable the admission of a YouTube video showing the defendant displaying gang signs, even if the video lacked a proper

21

foundation, did not contribute to the jury's verdict).[10]

*Judgment affirmed. All the Justices concur.*

Decided September 21, 2021.

Murder. Cobb Superior Court. Before Judge Ingram, Senior Judge.

*Sandra G. Dawson; Goldman & Donnelly, Sylvia Goldman,* for appellant.

*Flynn D. Broady, Jr., District Attorney, Samuel R. d'Entremont, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Matthew D. O'Brien, Assistant Attorneys General,* for appellee.

---

[10] Dunn does not argue that the evidentiary errors we assume for purposes of analysis in this opinion, though individually harmless, nevertheless cumulatively resulted in harm, and we discern no apparent cumulative prejudice on this record. See *State v. Lane*, 308 Ga. 10, 18 (1) (838 SE2d 808) (2020) ("[A] defendant who wishes to take advantage of the [cumulative error rule] should explain to the reviewing court just how he was prejudiced by the cumulative effect of multiple errors.").