**FIRST DIVISION
BARNES, P. J.,
BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**November 29, 2022**

# In the Court of Appeals of Georgia

A22A1509. THE STATE v. McKINNEY.

BROWN, Judge.

Jerrion McKinney was indicted with co-defendant Julian Conley for multiple violations of the Georgia Street Gang Terrorism and Prevention Act (OCGA § 16-15-1 et seq.; hereinafter "Georgia's Gang Act"), aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon stemming from gang protests that arose following the fatal shooting of Rayshard Brooks by Atlanta Police.[1] The State appeals the trial court's pre-trial ruling pursuant to OCGA §§ 16-15-1 et seq. and 24-4-418 ("Rule 418"), excluding two

---

[1] Co-defendant Conley was also indicted for murder and felony murder. The indictment charges 37 counts; McKinney was charged with 16 counts.

alleged prior acts of criminal gang activity committed by McKinney. For the reasons discussed below, we reverse and remand with direction.

The parties agree that on June 12, 2020, Rayshard Brooks was shot and killed by Atlanta Police at the Wendy's restaurant at 125 University Avenue. According to the State, Brooks was a member of the Piru Bloods criminal street gang. According to the State, as well as local news reports, as a result of Brooks' shooting, on July 4, 2020, armed Piru Bloods gang members blocked the intersection of 135 Pryor Road and 99 University Avenue in Atlanta and seized control of the area from authorities. The State expects the evidence to show that as vehicles attempted to pass through the area, McKinney and Conley pointed rifles in their direction, and that Conley opened fire on one of the vehicles. In doing so, Conley allegedly shot and killed eight-year-old Secoriea Turner as she was traveling in her family's vehicle. The State also plans to show that McKinney attempted to pursue the family's vehicle through traffic as it rushed to the hospital; that McKinney later identified himself on video surveillance at the scene immediately prior to the incident; that McKinney admitted that he had a loaded weapon at the time; that McKinney is a member of the Knot Boyz Gang, a hybrid street gang from the St. Louis, Missouri area, led by his older brother, which includes individuals from various Bloods gangs; and that McKinney's social media

2

showed numerous indicators of McKinney's gang membership, including the display of Bloods gang hand signals while wearing red clothing and holding a firearm.

On August 13, 2021, a Fulton County grand jury issued a 37-count indictment against McKinney and Conley. The indictment charged McKinney with twelve counts of violating Georgia's Gang Act, two counts of aggravated assault, and one count each of possession of a firearm during the commission of a felony and possession of a firearm by a convicted felon. On December 20, 2021, the State filed its notice of intent to introduce evidence of prior criminal gang activity pursuant to OCGA §§ 16-15-1 et seq., and 24-4-418. The State originally sought to introduce four prior acts against McKinney, but withdrew one of the acts at the hearing on its motion, leaving the following three prior acts: (1) an incident occurring on February 13, 2016, when McKinney shot himself in the foot with a 9mm pistol and then hid the gun in nearby bushes; (2) an incident occurring on May 4, 2015, when McKinney took a stolen firearm to school in Hazelwood, Missouri, and pointed it at a classmate's head; and (3) an incident occurring on April 3, 2017, when McKinney robbed two victims at gunpoint of an iPhone7.

Following a hearing, the trial court granted the State's request to introduce the third incident, but denied its request to introduce the first two incidents, finding as follows:

> The central dispute is whether the State must prove the prior acts were related to gang activity to be admissible under OCGA § 24-4-418. The State's primary argument is that the plain language of the statute does not require any connection between the prior acts and gang membership. . . . The [c]ourt finds in reading OCGA § 24-4-418 and its reference to OCGA §§ 16-5-3 and 16-15-4 and those statutes in conjunction with one another that a nexus between the prior act and an intent to further gang activity must be established for the evidence to be admissible under OCGA § 24-4-418 in this case. . . . As to Defendant McKinney, the [c]ourt finds that the nexus is met as related to the incident that occurred April 3, 2017. . . . At the time of the incident, police also arrested Temetrius Cross for participating in the robbery with Defendant McKinney. According to the State, "Cross is a known gang member with several gang tattoos on his person (314 dripping in blood, five pointed star, and head of a cardinal shaded in red) and a history of engaging in gang activity." The State also indicates that at the time Defendant McKinney was known to be associated with the criminal street gang KBG in Missouri, his brother Ryan McKinney was identified to law enforcement as the leader of KBG, and law enforcement indicates KBG is involved in criminal activities. . . . The [c]ourt further finds that [the other two incidents] do not have the requisite nexus between the act

4

and intent to further street gang activity for the acts to be admissible under OCGA §§ 16-15-9 or 24-4-418.

The State appeals from this order.

1. Before reaching the merits of this appeal, we note that the State's brief fails to comply with the rules of this Court in that it contains nothing designated as an enumeration of errors. "Our requirements as to the form of appellate briefs were created, not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this [C]ourt." (Citation and punctuation omitted.) *Orange v. State of Georgia*, 319 Ga. App. 516, 517 (1) (736 SE2d 477) (2013). "[T]his Court has considered appeals despite the appellant's failure to file an enumeration of errors where we could discern the errors asserted on appeal." *Advantage Behavioral Health Systems v. Cleveland*, 350 Ga. App. 511, 515 (1) (829 SE2d 763) (2019) ("[n]otwithstanding the State's failure to include an enumeration of errors in its brief, this Court is required to consider the appeal because we can discern from the State's brief and the record the errors that the State is asserting on appeal") (citation and punctuation omitted). Given that we are able to decipher from the State's brief and the record the error that the State is asserting on appeal, we will consider the appeal. "However, we emphasize for [the

State] and other appellants the importance of following appellate practice rules, including the filing of an enumeration of errors. Such rules foster judicial efficiency and aid appellate courts in reaching the right result, and failure to follow them may result in dismissal of an appeal." Id. at 517 (1).

2. The State contends that the trial court abused its discretion by excluding evidence of McKinney's prior criminal gang activity because the plain language of Rule 418 does not require the State to show that any of the prior acts were committed in furtherance of the gang. The State argues that the trial court's order confuses the definition of criminal gang activity (OCGA § 16-15-3) and the elements of proof of the crime of participation in criminal street gang activity (OCGA § 16-15-4), and improperly required the State to prove the elements under the latter Code section even though that is not the standard. In its view, the trial court erred by sua sponte adding requirements to Rule 418 that do not appear in the plain language of the statute.[2]

"Like other evidence, the admission of evidence of gang activity is committed to the sound discretion of the trial court, and the court's decision to . . . exclude such

[2] The National Alliance of Gang Investigators Associations and Georgia Gang Investigators Association filed an amicus brief in which they make similar arguments, namely that a plain reading of Rule 418 and the application of fundamental principles of statutory construction require reversal in this case.

evidence will not be disturbed on appeal absent an abuse of discretion." (Citation and punctuation omitted.) *State v. Thomas*, 364 Ga. App. 148, 149 (2) (874 SE2d 195) (2022). "But . . ., the abuse-of-discretion standard does not permit a clear error of judgment or the application of the wrong legal standard." (Citation and punctuation omitted.) Id.

Our analysis begins with Rule 418, which provides:

> (a) In a criminal proceeding in which the accused is accused of conducting or participating in criminal gang activity in violation of Code Section 16-15-4, evidence of the accused's commission of criminal gang activity, as such term is defined in Code Section 16-15-3, shall be admissible and may be considered for its bearing on any matter to which it is relevant.

> (b) In a proceeding in which the prosecution intends to offer evidence under this Code section, the prosecutor shall disclose such evidence to the accused, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least ten days in advance of trial, unless the time is shortened or lengthened or pretrial notice is excused by the judge upon good cause shown.

> (c) This Code section shall not be the exclusive means to admit or consider evidence described in this Code section.

OCGA § 24-4-418.

OCGA § 16-15-3 provides as follows:

As used in this chapter, the term:

(1) "Criminal gang activity" means the commission, attempted commission, conspiracy to commit, or the solicitation, coercion, or intimidation of another person to commit any of the following offenses on or after July 1, 2006:

    (A) Any offense defined as racketeering activity by Code Section 16-14-3;

    (B) Any offense defined in Article 7 of Chapter 5 of this title, relating to stalking;

    (C) Any offense defined in Code Section 16-6-1 as rape, 16-6-2 as aggravated sodomy, 16-6-3 as statutory rape, or 16-6-22.2 as aggravated sexual battery;

    (D) Any offense defined in Article 3 of Chapter 10 of this title, relating to escape and other offenses related to confinement;

    (E) Any offense defined in Article 4 of Chapter 11 of this title, relating to dangerous instrumentalities and practices;

    (F) Any offense defined in Code Section 42-5-15, 42-5-16, 42-5-17, 42-5-18, or 42-5-19, relating to the security of state or county correctional facilities;

(G) Any offense defined in Code Section 49-4A-11, relating to aiding or encouraging a child to escape from custody;

(H) Any offense of criminal trespass or criminal damage to property resulting from any act of gang related painting on, tagging, marking on, writing on, or creating any form of graffiti on the property of another;

(I) Any criminal offense committed in violation of the laws of the United States or its territories, dominions, or possessions, any of the several states, or any foreign nation which, if committed in this state, would be considered criminal gang activity under this Code section; and

(J) Any criminal offense in the State of Georgia, any other state, or the United States that involves violence, possession of a weapon, or use of a weapon, whether designated as a felony or not, and regardless of the maximum sentence that could be imposed or actually was imposed.

(2) "Criminal gang activity" on and after April 18, 2019, shall also mean the commission, attempted commission, conspiracy to commit, or the solicitation, coercion, or intimidation of another person to commit on and after April 18, 2019, any offense defined in Code Section 16-5-46 as trafficking persons for labor servitude or sexual servitude, 16-6-10 as keeping a place of prostitution, 16-6-11 as pimping, or 16-6-12 as pandering.

(3) "Criminal street gang" means any organization, association, or group of three or more persons associated in fact, whether formal or informal, which engages in criminal gang activity as defined in paragraph (1) of this Code section. The existence of such organization, association, or group of individuals associated in fact may be established by evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics, including, but not limited to, common activities, customs, or behaviors. Such term shall not include three or more persons, associated in fact, whether formal or informal, who are not engaged in criminal gang activity.

OCGA § 16-15-4 provides, in pertinent part, that

(a) It shall be unlawful for any person employed by or associated with a criminal street gang to conduct or participate in criminal gang activity through the commission of any offense enumerated in paragraph (1) of Code Section 16-15-3.

(b) It shall be unlawful for any person to commit any offense enumerated in paragraph (1) of Code Section 16-15-3 with the intent to obtain or earn membership or maintain or increase his or her status or position in a criminal street gang.

OCGA § 16-15-4 (a), (b).

The State's primary argument below was that the plain language of Rule 418 does not require any connection between the prior acts and gang membership. The

trial court rejected this argument, relying on *Rodriguez v. State*, 284 Ga. 803 (671 SE2d 497) (2009), which states that "OCGA § 16-15-4 must be read in conjunction with the definitions of 'criminal gang activity' and 'criminal street gang' in OCGA § 16-15-3." Id. at 805 (1). Thus, the trial court concluded that "a nexus between the prior act and an intent to further gang activity must be established for the evidence to be admissible under OCGA § 24-4-418 in this case."

The State contends that the trial court's ruling violated separation of powers, the plain text of Rule 418, the legislative intent, and constitutes judicial overreach.[3] In particular, the State argues that in excluding the two alleged prior gang acts, the trial court ignored subsection (1) (J) of Code section 16-15-3, which establishes that "criminal gang activity" includes "[a]ny criminal offense in the State of Georgia, any other state, or the United States that involves violence, possession of a weapon, or use of a weapon, whether designated as a felony or not, and regardless of the maximum sentence that could be imposed or actually was imposed."

McKinney contends that the statutes must be read in harmony to avoid absurd results such as that advanced by the State. In particular, Rule 418 must be read in

---

[3] The State concedes that Rule 418 only applies in cases indicted under Georgia's Gang Act.

11

conjunction with the definitions of "criminal gang activity" and "criminal street gang" found in OCGA § 16-15-3 (1) and (3). In his view, it would be utterly absurd for his act of shooting himself in the foot to be admitted as part of gang activity under Rule 418.

The statute at issue here, Rule 418, has not often been cited by our appellate courts and has never been substantively construed. See, e.g., *Overstreet v. State*, 312 Ga. 565, 576 (2) (864 SE2d 14) (2021); *Dunn v. State*, 312 Ga. 471, 477 (2) (a) (863 SE2d 159) (2021); *State v. Thomas*, 364 Ga. App. 148, n.3 (874 SE2d 195) (2022).

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. . . . [I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013). See also *Thornton v. State*, 310 Ga. 460, 462-463 (2) (851 SE2d 564) (2020). "The interpretation of a statute is a question of law, which is reviewed de novo on appeal." (Citations and punctuation omitted.) *Kemp v. Kemp*,

337 Ga. App. 627, 632 (788 SE2d 517) (2016). See also *City of College Park v. Martin*, 304 Ga. 488, 489 (818 SE2d 620) (2018).

Applying these principles, we conclude that the State's interpretation of the statute is correct and that evidence of criminal gang activity that shall be admitted under Rule 418 is that activity defined in OCGA § 16-15-3. On its face, the statute does not require a nexus between a defendant's commission of the predicate act and an intent to further the gang activity, nor does the Supreme Court's decision in *Rodriguez*, supra.

In *Rodriguez*, the Supreme Court held that the crime of participation in criminal gang activity requires (1) active participation by the defendant in a street gang, which is defined in OCGA § 16-15-3 (3) as any group of three or more people associated in fact that "engages in criminal gang activity"; (2) commission of at least one predicate act enumerated in OCGA § 16-15-3 (1); and (3) a nexus between the defendant's commission of the predicate act and an intent to further the gang activity. 284 Ga. at 806-807 (1). The Court found that the "nexus is provided by use of the preposition 'through' in OCGA § 16-15-4 (a)." Id. at 807 (1). Thus, it was interpreting only the definition of the crime found in OCGA § 16-15-4, not the language found in OCGA § 16-15-3 or Rule 418. As Rule 418 contains no such language similar to that found

13

in OCGA § 16-15-4, *Rodriguez* has no bearing on the issue now before us. Rather, Rule 418 requires the commission of an act of criminal gang activity "as defined in Code Section 16-15-3." Given the plain language of Rule 418, the trial court must find, prior to admitting the proffered evidence, that the conduct alleged, if proven, would constitute a violation of one of the listed statutes in OCGA § 16-15-3 or the commission of one of the crimes specified in OCGA § 16-15-3. It does not require the trial court to find any nexus between the alleged conduct and an intent to further gang activity. The statute being "clear and unambiguous," "our search for statutory meaning is at an end." *Deal*, 294 Ga. at 173 (1) (a). The trial court therefore erred in excluding the prior acts on this basis, and we reverse.[4]

3. This does not, however, end the matter. We must view Rule 418 within the broader context of the Evidence Code. Much like Rule 418, OCGA § 24-4-414 — and two related statutes, OCGA §§ 24-4-413 and 24-4-415 — allows the admission of prior sexual offenses committed by a defendant. As to those Code sections, the appellate courts of this State have held that even though they have been construed as creating a rule of inclusion, with a strong presumption in favor of admissibility,

---

[4] Given this ruling, we need not address the State's other arguments, i.e., that the trial court's ruling violated separation of powers and legislative intent, and constitutes judicial overreach.

evidence that is admissible under these statutes may be excluded if the trial court concludes that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The determination as to whether to exclude evidence for any of these reasons calls for a common sense assessment of all the circumstances surrounding the previous offense, including prosecutorial need, overall similarity between the previous act and the charged offense, as well as temporal remoteness. Indeed, exclusion of otherwise probative and relevant evidence under OCGA § 24-4-403 is an extraordinary remedy which should be used only sparingly.

(Citations and punctuation omitted.) *State v. McPherson*, 341 Ga. App. 871, 873-874 (800 SE2d 389) (2017). See also *Hutcheson v. State*, 361 Ga. App. 890, 894 (1) (864 SE2d 106) (2021); *Jackson v. State*, 342 Ga. App. 689, 692-693 (805 SE2d 457) (2017) (vacating and remanding case for trial court to apply balancing test set forth in OCGA § 24-4-403 in deciding whether to admit prior acts under OCGA § 24-4-414). Although an appellate court of this State has never expressly held that the trial court must apply the balancing test set forth in OCGA § 24-4-403, in deciding whether to admit the alleged prior acts of criminal gang activity under Rule 418, the Supreme Court of Georgia approved of its use in *Overstreet*, 312 Ga. at 575-576 (2) (trial court performed balancing test required by OCGA § 24-4-403 before admitting evidence pursuant to OCGA §§ 16-15-9 and 24-4-418). Accordingly, we remand this

15

case to the trial court for a determination of the admissibility of the alleged prior acts

of criminal gang activity under OCGA § 24-4-403.[5] See *State v. Jones*, 297 Ga. 156,

163 (3) (773 SE2d 170) (2015). See also *State v. Plaines*, 345 Ga. App. 205, 212 (812

SE2d 571) (2018) (physical precedent only); *Jackson*, 342 Ga. App. at 693.

*Judgment reversed and case remanded with direction. Barnes, P. J., and Hodges, J., concur.*

---

[5] We note that the trial court conducted the balancing test set forth in OCGA § 24-4-403 for the April 3, 2017 incident where McKinney robbed two victims at gunpoint.