**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

October 17, 2024

# In the Court of Appeals of Georgia

A24A0949. SOWELL v. THE STATE.

MILLER, Presiding Judge.

A Dawson County jury found Zoe Sowell guilty of homicide by vehicle based on driving under the influence ("DUI") per se, homicide by vehicle based on DUI less safe, serious injury by vehicle, and other offenses. Sowell appeals from the denial of her motion for new trial, arguing that (1) the trial court committed reversible error by admitting expert testimony about retrograde extrapolation during trial; and (2) the evidence was insufficient to sustain her convictions for serious injury by vehicle. For the reasons that follow, we affirm the trial court's order denying Sowell's motion for new trial.

Viewed in the light most favorable to the verdicts,[1] the evidence presented at trial showed the following. In the evening hours of September 17, 2019, John Pritchard met Sowell, whom he had been friends with for a number of years, and another acquaintance, Robert Petty, at a restaurant where they were already seated at a table with a pitcher of margaritas. Pritchard went to Sowell's home later that evening, along with Alyssa Boger, Kaitlynn Head, and Steven Caldwell, where Sowell drank a bottle of "Fireball." The group later left the home in Sowell's vehicle to socialize at a cul-de-sac before returning to Sowell's house. Pritchard did not want to get in the car, and he tried to convince Sowell to let someone else drive because she was "intoxicated," but she would not let anyone else drive.

Just after midnight, as Sowell drove along Grant Ford Drive in Dawson County, Caldwell yelled "Go, Zoe," and Sowell began to speed on the roadway. Pritchard believed that a crash was "imminent," and he told Caldwell to "shut up" and told Sowell to "slow the F down." Sowell "jerked" the steering wheel all the way to the left as the car came into a curve, but the car traveled straight on the roadway, and she took her hands off the wheel. Pritchard attempted to reach for the steering wheel, but

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

the car left the roadway, traveled down a small embankment then back up another embankment, struck several trees, and overturned before coming to rest on its right side. Head managed to call 911.[2]

Deputy Kevin Christopher and Investigator Myron Ward from the Dawson County Sheriff's Office arrived on scene and observed Caldwell and Boger lying on the ground outside of the vehicle.[3] Caldwell was bleeding and breathing uncontrollably, and his wrist appeared to be possibly broken. Boger struggled to breathe, was severely injured, and her body shivered. Caldwell and Boger were transported to a hospital via Life Flight, but Boger died from "blunt force trauma of the head and torso."

Investigator Ward spoke with Sowell, who admitted that she was driving at the time of the accident. While speaking with Sowell, he noticed the odor of an alcoholic beverage coming from her breath and her person, and she admitted that she drank one margarita two hours before the accident. When asked about the accident, Sowell stated that she was driving home, that "somebody made a statement about go faster,"

---

[2] The 911 call was entered into evidence and published to the jury.

[3] Video footage from Deputy Christopher's patrol vehicle was entered into evidence and published to the jury.

and that she sped up and lost control of the vehicle. Sowell told another officer on scene that she had two margaritas, and that officer also smelled the odor of alcohol coming from Sowell. Law enforcement conducted field sobriety exercises with Sowell, and based on her performance during the exercises, they determined that her ability to drive was impaired by alcohol and placed her under arrest. Sowell agreed to provide a blood sample, and testing showed that her blood alcohol concentration was .115.[4]

At trial, the State presented expert testimony from Karla Turner, a forensic toxicologist with the Georgia Bureau of Investigation, who testified that one of her primary responsibilities is to test blood specimens for the presence or absence of alcohol. She testified about "retrograde extrapolation," which is an estimation of a person's blood alcohol concentration at an earlier time period based on studies of the rates at which people emit alcohol from their blood. In this case, Turner estimated that Sowell's blood alcohol concentration would have been between .145 and .190 at the time of the crash.

---

[4] The crash took place around 12:07 a.m., but Sowell's blood was not drawn until 3:10 a.m. See OCGA § 40-6-391 (a) (5) (stating that it is unlawful for a person to drive a vehicle with a blood alcohol concentration that is "0.08 grams or more at any time *within* three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended[.]") (emphasis supplied).

Caldwell testified that he did not remember the crash, and that he was still undergoing medical treatment and was taking medication for seizures. The trial court read a stipulation that Sowell and the State agreed to, which stated in part: "Steven Caldwell was hospitalized for treatment of traumatic brain injury with loss of consciousness associated with and as a result of injuries received from the aforementioned crash."

Sowell was indicted for homicide by vehicle based on DUI per se (OCGA § 40-6-393 (a)), homicide by vehicle based on DUI less safe (OCGA § 40-6-393 (a)), homicide by vehicle based on reckless driving (OCGA § 40-6-393 (a)), serious injury by vehicle based on DUI per se (OCGA § 40-6-394), serious injury by vehicle based on DUI less safe (OCGA § 40-6-394), serious injury by vehicle based on reckless driving (OCGA § 40-6-394), DUI per se (OCGA § 40-6-391 (a) (5)), DUI less safe (OCGA § 40-6391 (a) (1)), reckless driving (OCGA § 40-6-390), driving too fast for conditions (OCGA § 40-6-180), and failure to maintain lane (OCGA § 40-6-48). The jury convicted Sowell on all counts, and the trial court sentenced her to 30 years, with the first 15 years to be served in confinement and the remainder on probation.[5] Sowell

[5] The trial court merged Sowell's convictions for homicide by vehicle based on DUI less safe and reckless driving, serious injury by vehicle based on DUI less safe and

filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

1. Sowell first argues that the trial court committed reversible error by allowing Turner to testify about retrograde extrapolation because the testimony was not based on sufficient facts or data and was not properly tethered to the facts of this case. We conclude that Sowell cannot show that the trial court committed reversible error by allowing Turner to testify about retrograde extrapolation.

(a) As a preliminary matter, we address the appropriate standard of review for this issue since the parties dispute whether this claim was preserved for appellate review.

Although there are no magic words that are needed to make a proper objection, we have been clear that "[i]n order to preserve an objection upon a specific ground for appeal, the objection must be made at trial upon that *specific* ground." (Citation omitted; emphasis supplied.) *Brown v. State*, 367 Ga. App. 114, 115 (885 SE2d 87) (2023); see also *Ellis v. State*, 287 Ga. 170, 172 (2) (695 SE2d 35) (2010) ("[O]bjections should be made with sufficient specificity for the trial court to identify

_____

reckless driving, DUI per se, DUI less safe, reckless driving, driving too fast for conditions, and failure to maintain lane for sentencing purposes.

6

the precise basis.") (citation and punctuation omitted). "Thus, the failure to make a timely and specific objection ordinarily precludes appellate review of that issue." *Brown*, supra, 367 Ga. App. at 115.

At a pre-trial hearing, trial counsel stated the following in response to the State's indication that it would present evidence on retrograde extrapolation:

> [TRIAL COUNSEL]: We've not been given any scientific opinion that has to do with this case and anyone performing any analysis in a scientific way of going backwards in time to equate what a blood alcohol level might have been at a certain point in time.
>
> So we would object to any testimony from any witness as to some analysis -- quite scientific. And we're entitled under the very basic *discovery statute* to scientific reports. I don't believe there are any. We've certainly not been given any. And we don't want to hear about any.

After counsel for the State pointed out that Turner was identified on the witness list and referenced Turner's prior testimony at a motion to suppress hearing and explained that she would testify as an expert in forensic analysis and offer testimony about retrograde extrapolation, trial counsel responded, "[s]he didn't talk about how it goes up and down and ingested and eliminated. So we object." The trial court stated

7

that it would make a determination regarding Turner's testimony at trial and that the State should disclose any reports pertaining to Turner's testimony in its possession.

At trial, counsel for the State again raised the issue of Turner's testimony and argued the following about retrograde extrapolation:

> The State's position is that is not a scientific experiment or test which would require us to provide notice to the defense. That's something that's within the knowledge of our particular expert that she's qualified to testify to.

Trial counsel responded,

> [i]f there's going to be a hypothetical question that's also based upon any facts in evidence, that would be an expert opinion, *and a scientific opinion at that, that we would have been entitled to a long, long time ago*. To just say alcohol rises and falls and digests and ingests and leaves the body at a certain rate is one very simple thing.

> But not if she's going to start making calculations and then going by different hours based upon the case. *That would be a hypothetical question from an expert witness that we would be entitled to know about so we could determine whether we needed to confront it with a similar expert*.

The trial court then ruled:

I think that it goes within the range of -- likely, I presume there will be a foundation laid for how she has a range of knowledge in her field as to having expertise in that area. So I'm not going to exclude her testifying as to that. If she has any reports or summaries of that [counsel for the State], you would have an obligation to provide those to [trial counsel]. But my understanding is that she does not and this is, effectively, just from her experience and expertise. [Trial counsel], I will give you an opportunity . . . to speak with Ms. Turner about this process. I think you're otherwise aware of what she would intend to testify to.

Before Turner testified, the trial court paused the trial proceedings so that trial counsel could speak with Turner regarding retrograde extrapolation. During Turner's direct examination, the trial court questioned trial counsel as to whether he had "any request to voir dire" or if he had any other objection, to which trial counsel responded, "[n]o additional objection to the proceeding, your Honor."

In light of this record, we agree with the State that Sowell failed to preserve this issue for appellate review. Although Sowell argues extensively in her appellate brief that retrograde extrapolation is not admissible under OCGA § 24-7-702 for various reasons and that the trial court erred by allowing Turner to testify concerning it, Sowell did not raise *any* of her arguments in the trial court below. Although Sowell asserts that she preserved this issue at the pretrial hearing when trial counsel argued

9

that Turner "didn't talk about how it goes up and down and ingested and eliminated. So we object," this claim is unavailing. As reflected above, trial counsel objected on the basis that he did not receive any reports in discovery that contained an expert opinion. The State then responded by noting that Turner had testified previously at the motion to suppress hearing, to which trial counsel responded, "she didn't talk about how it goes up and down and ingested and eliminated. So we object." Thus, in context, Sowell's objection addressed a procedural issue, i.e., a purported lack of notice of expert testimony regarding retrograde extrapolation, rather than a substantive objection regarding the admissibility of retrograde extrapolation under the rules of evidence. Furthermore, the trial court's ruling merely indicates that Turner's testimony would not be excluded on the basis of lack of notice and that she could testify with hypotheticals because a foundation could be laid to establish *her expertise*, but the court did not make any substantive ruling as to whether retrograde extrapolation was admissible under OCGA § 24-7-702. See *Anthony v. State*, 302 Ga. 546, 549-550 (II) (807 SE2d 891) (2017) (the defendant waived for appellate review the issue, concerning the trial court's refusal to suppress evidence of a witness' identification of the defendant as the perpetrator from a photographic lineup, where

10

the defendant only argued at trial that he had not received the lineup during discovery, but he argued on appeal that the lineup was flawed). Consequently, in light of Sowell's failure to preserve this issue for appellate review, we will review this claim for plain error only. See *Brown*, supra, 367 Ga. App. at 116 (stating that the Supreme Court of Georgia has applied plain error review "to issues pertaining to . . . evidentiary rulings for cases tried after January 1, 2013.").

(b) To establish plain error,

[f]irst, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and emphasis omitted.) *Williams v. State*, 315 Ga. 490, 495 (2) (883 SE2d 733) (2023). "An appellant must establish all four elements of the test in order to demonstrate plain error, so satisfying this test is difficult, as it should be." (Citation

omitted.) *Dunn v. State*, 312 Ga. 471, 478 (2) (b) (863 SE2d 159) (2021). And, "[we do] not have to analyze all elements of the plain-error test where an appellant fails to establish one of them." *Payne v. State*, 314 Ga. 322, 325 (1) (877 SE2d 202) (2022).

It is unnecessary for us to analyze all four prongs of the plain error test because Sowell cannot establish the second prong, that the error in allowing the testimony was clear or obvious. As to the second prong, it is well settled that "[a]n error is plain if it is clear or obvious under current law. An error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results." (Citation omitted.) *Williams*, supra, 315 Ga. at 496 (2). Neither this Court nor the Supreme Court of Georgia have squarely addressed whether retrograde extrapolation is admissible in Georgia.[6] Consequently, in the absence of

---

[6] The two criminal cases from Georgia that mention retrograde extrapolation did not directly address whether such testimony was admissible at trial. See *State v. Robertson*, 369 Ga. App. 707 (894 SE2d 431) (2023); *Evans v. State*, 253 Ga. App. 71 (558 SE2d 51) (2001). Notably, in *Evans*, the defendant argued that the trial court erred in excluding expert testimony "regarding the absorption and elimination of alcohol in the human body, and the application of retrograde extrapolation based on the Widmark formula." (emphasis supplied.) *Evans*, supra, 253 Ga. App. at 75 (2). *Evans*, however, was decided before the Legislature changed the statute and legal standard governing the admissibility of expert testimony. See Ga. L. 2022, p. 201 §§ 1-2. Moreover, we held that the testimony was properly excluded because the defendant was charged with DUI less safe, a factual basis was not presented for the expert to make the calculation, and the defendant did not establish the requisite

12

controlling authority, Sowell cannot establish that the trial court committed plain error by allowing Turner to testify about retrograde extrapolation.[7] See id. (holding that the defendant could not establish that the trial court committed plain error by admitting evidence of cell-site location information because there was no controlling authority requiring that a warrant particularly describe the physical location of data in a search warrant seeking electronic records from a cell service provider's database).

2. Second, Sowell argues that the evidence was insufficient to sustain her convictions for serious injury by vehicle because although she stipulated below that Caldwell suffered a "traumatic brain injury," there was no evidence that Caldwell suffered a broken wrist or a severe head injury as alleged in the indictment. We

---

verifiable certainty of the formula. Id. at 75-77 (2) (a)-(c). Yet, we specifically stated that "it is appropriate for the trial court to permit expert testimony utilizing the Widmark formula only when it is demonstrated with verifiable certainty that [the formula] is an accurate and reliable means of ascertaining a person's blood alcohol content." (Citations, punctuation, and emphasis omitted.) Id. at 77 (2) (c). Thus, even if Turner's retrograde extrapolation formula was the same as that in *Evans*, *Evans* did not automatically require its exclusion.

[7] To be clear, all that we decide today is that Sowell cannot show that the trial court committed plain error by allowing Turner to testify about retrograde extrapolation at trial. We leave for another day the issue of whether such testimony is admissible under OCGA § 24-7-702.

conclude that the evidence was sufficient to sustain her conviction for serious injury by vehicle.[8]

> When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. Significantly, in evaluating the sufficiency of the evidence, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. The jury's verdict will be upheld, then, so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.

(Citations, punctuation, and footnotes omitted.) *Hewett v. State*, 371 Ga. App. 455, 457 (1) (901 SE2d 208) (2024).

---

[8] As stated above, three counts of the indictment charged Sowell with serious injury by vehicle based on DUI per se, DUI less safe, and reckless driving. The jury convicted Sowell on all charges, and the trial court merged Sowell's convictions for serious injury by vehicle based on DUI less safe and reckless driving for sentencing purposes. Therefore, although Sowell challenges the sufficiency of her convictions for all three serious injury by vehicle offenses, we only address her claim insofar as it pertains to her conviction for serious injury by vehicle based on DUI per se, Count 4 of the indictment, which the trial court did not merge. See *Ellington v. State*, 314 Ga. 335, 340 (2) (877 SE2d 221) (2022) (defendant's insufficiency of the evidence claims were moot because the convictions were merged for sentencing purposes).

OCGA § 40-6-394 (b) (2019) provided, in part, that "[a]ny person who, without malice aforethought, causes an accident that results in bodily harm while violating Code Section 40-6-390 or 40-6-391 commits the crime of serious injury by vehicle."[9] The statute defined "bodily harm" as "an injury to another person which deprives him or her of a member of his or her body, renders a member of his or her body useless, seriously disfigures his or her body or a member thereof, or causes organic brain damage which renders his or her body or any member thereof useless." OCGA § 40-6-394 (a) (2019). In construing this statute, we have been clear that "to constitute the crime of serious injury by vehicle, there is no requirement that, in addition to being serious, the member of the victim be permanently rendered useless." (Citation omitted.) *Wells v. State*, 297 Ga. App. 153, 158 (1) (d) n.21 (676 SE2d 821) (2009). Furthermore, whether the injuries sustained by a victim are sufficient to sustain a conviction under OCGA § 40-6-394 is generally a question of fact for the jury. *Moss v. State*, 209 Ga. App. 59, 60 (1) (432 SE2d 825) (1993).

---

[9] "[I]n general, a crime is to be construed and punished according to the provisions of the law existing at the time of its commission." *Fleming v. State*, 271 Ga. 587, 590 (523 SE2d 315) (1999).

Here, Count 4 of the indictment alleged that Sowell committed serious injury by vehicle to Caldwell "by rendering a member of his body useless, to wit: a broken wrist and severe head injury."[10] Sowell and the State stipulated that Boger and Caldwell "were passengers in a 2004 Mazda that was involved in a single-vehicle crash on Grant Ford Road in Dawson County" and that "Caldwell was hospitalized for treatment of traumatic brain injury with loss of consciousness associated with and as a result of injuries received from the aforementioned crash," and the stipulation was read to the jury. The trial court also instructed the jury, without objection from Sowell, that "when parties stipulate facts and this is in the nature of evidence, you must take that fact or those facts as a given without the necessity of further proof. You make all decisions based on the evidence in this case." Furthermore, although Caldwell testified that he had no recollection of the crash and only remembers waking up in the hospital, he testified that he was still undergoing medical treatment and was

---

[10] As Sowell acknowledges, "[i]f a crime may be committed in more than one way, it is sufficient for the State to show that it was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form." (Citation omitted.) *Graham v. State*, 337 Ga. App. 193, 197 (2) (786 SE2d 857) (2016). Thus, in this case, the State had to prove that Sowell committed serious injury by vehicle to Caldwell by a broken wrist *or* a severe head injury.

16

taking medication to manage seizures. Thus, when put together, the evidence showed that Caldwell suffered a traumatic brain injury from the accident that resulted in a loss of consciousness and that he was still receiving medical care for seizures. Therefore, it was for the jury to determine whether Caldwell sustained a "severe head injury," and we conclude that a rational trier of fact could reasonably have found beyond a reasonable doubt that Caldwell sustained a severe head injury.[11] See *Adams v. State*, 259 Ga. App. 570, 571 (1) (578 SE2d 207) (2003) (evidence was sufficient to show that defendant committed serious injury by vehicle by rendering the victim's legs useless, where the evidence showed that the victim was in a coma after the accident and thus the victim "obviously had no use of her legs"). Consequently, Sowell's insufficiency of the evidence claim fails.

Accordingly, for the foregoing reasons, we affirm the trial court's order denying Sowell's motion for new trial.

*Judgment affirmed. Markle and Land, JJ., concur.*

---

[11] Although Sowell references a doctor's testimony in *Phillips v. State*, 260 Ga. 742, 744 (399 SE2d 202) (1991), that the victim sustained a brain injury without damaging the "vault or bone around the brain," there is no language from the Supreme Court of Georgia in *Phillips* to indicate that there is a legal distinction between a brain injury and a head injury, or that evidence of a brain injury is insufficient to show that the victim sustained a head injury.